**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

SHARON VERSAGGI,

                           1:18-cv-14860-NLH

        Plaintiff,

                           **OPINION**

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

**APPEARANCES:**

ALAN H. POLONSKY
POLONSKY AND POLONSKY
512 S WHITE HORSE PIKE
AUDUBON, NJ 08106

    *On behalf of Plaintiff*

NAOMI B. MENDELSOHN
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB")[1] under Title II of the Social Security

---

[1] DIB is a program under the Social Security Act to provide

Act. 42 U.S.C. § 423, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since her alleged onset date of disability, March 5, 2014. For the reasons stated below, this Court will reverse that decision and remand the matter for further consideration consistent with this Opinion.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On February 11, 2015, Plaintiff Sharon Versaggi, protectively filed an application for DIB,[2] alleging that she became disabled on March 5, 2014. Plaintiff claims that she can no longer work as a pediatric nurse because of her bipolar disorder and anxiety disorder. After Plaintiff's claim was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ, which was held on August 11, 2017. The ALJ issued an unfavorable decision on September 21, 2017. Plaintiff's Request for Review of Hearing Decision was denied by

---

disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months. 42 U.S.C. § 423 et seq.

[2] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits. That date may be earlier than the date of the formal application and may provide additional benefits to the claimant. See SSA Handbook 1507; SSR 72-8.

the Appeals Council on August 23, 2018, making the ALJ's September 21, 2017 decision final. Plaintiff brings this civil action for review of the Commissioner's decision.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its

totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches

4

> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).

In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182. However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B. Standard for DIB**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

5

death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A).

Under this definition, a Plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[3] for determining disability that require application of a five-step sequential analysis. See 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a

---

[3] The regulations were amended for various provisions effective March 27, 2017. See 82 F.R. 5844. Neither party states that these amendments apply in this case.

>    continuous period of at least twelve months, the
>    claimant will be found "disabled."
>
> 4. If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."
>
> 5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy. If she is incapable, she will be found "disabled." If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C. Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since March 5, 2014. At step two, the ALJ found that Plaintiff's impairments of bipolar and anxiety were severe.[4] At step three, the ALJ determined that Plaintiff's severe impairments or her severe impairments in combination with her other impairments did not equal the severity of one of the listed impairments. At step four, the ALJ determined that Plaintiff's residual functional capacity ("RFC") did not allow her to work her past job as a pediatric nurse, but she was able to perform a full range of work at all exertional levels, except that Plaintiff was limited to performing simple, unskilled work. At step five, upon consideration of the testimony of a vocational expert, the ALJ determined that significant jobs existed in the national economy that Plaintiff was capable of performing, such as a telephone order clerk, office helper, and hand packager.

Plaintiff argues that the ALJ erred in four ways: (1) the ALJ did not provide Plaintiff with a fair and impartial hearing; (2) the ALJ's finding at step three that none of Plaintiff's impairments equaled the listings is not supported by substantial

---

[4] The Court notes that Plaintiff's medical records evidence a long history of major depression. Plaintiff does not challenge the absence of that impairment at step two.

8

evidence; (3) the ALJ's finding as to Plaintiff's RFC is not supported by substantial evidence; and (4) the vocational expert's resources to support the ALJ's finding that alternative jobs existed that Plaintiff could perform do not constitute substantial evidence.

The Court finds that the ALJ erred at step three and in his RFC analysis, and remand of the matter to the ALJ is warranted for further consideration consistent with the Court's findings below.[5]

---

[5] The Court briefly disposes of Plaintiff's two other bases for appeal:

First, Plaintiff claims that the ALJ did not provide her with a fair and impartial hearing because he suggested meditation and forgiveness to assist in Plaintiff's treatment of her mental disorders. Plaintiff has failed to demonstrate that the ALJ's comments rise to the level required for reversal on this basis. See 20 C.F.R. § 416.1440 ("An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision."); Hummel v. Heckler, 736 F.2d 91, 94 (3d Cir. 1984) (explaining that a biased judge results in a violation of due process); Cates v. Commissioner of Social Security, 752 F. App'x 917, 923 (11th Cir. 2018) (citing Schweiker v. McClure, 456 U.S. 188, 196 (1982)) ("When such an issue [of not receiving a full and fair hearing] is preserved, we will presume that an ALJ – like other judicial or quasi-judicial officers – is not biased, and it is the moving party's burden to show bias or some other reason for disqualification."). Moreover, Plaintiff does not show that she presented this argument at the administrative level which is required to advance that claim here. See Hummel, 736 F.2d at 94 (explaining that the factfinding with respect to claims of bias take place at the agency level, judicial review of bias claims take place in review proceedings under section 405(g), and if a claimant had been aware of the facts giving rise to her claim of bias during the administrative level she would be deemed to have

The ALJ found at step three that Plaintiff's mental impairments were only mild or moderate, and they did not markedly impact her functioning for a continuous period of at least twelve months, which is required for a finding of disability at step three. 20 C.F.R. § 404.1520(a)(iii). The ALJ only issued conclusory findings at this step, but indicated that support for this finding was "fully discussed below." (R. at 16.) This Court finds that discussion insufficient under the applicable standard to support the ultimate conclusion.

At step four, after recounting some of the record evidence, the ALJ concluded:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. To the claimant's credit, the claimant had a consistent work history prior to the claimant's onset date (Exhibit 4D). However, the claimant had stable mental status examinations

---

waived it by failing to raise it in the manner specified in 20 C.F.R. § 416.1440).

Second, the Court rejects Plaintiff's challenge to the vocational expert's testimony based on the statistics he used to support the number of jobs in the national economy Plaintiff is capable of performing. See Biestek v. Berryhill, 139 S. Ct. 1148, 1155 (U.S. 2019) (explaining that that VEs do not need to provide an applicant with the data supporting their testimony regarding suitable jobs and statistics to support a VE's testimony "clear (even handily so) the more-than-a-mere-scintilla threshold").

10

in the record (Exhibit 10F, Exhibit 12F). Moreover, the
claimant reported feeling better with a medication
adjustment and continued to do well in her most recent
appointment (Exhibit 12F, 23-25). Lastly, the claimant is
still able to perform activities of daily living, as during
her March 2015 consultative examination, the claimant said
she can perform household chores, can perform personal
grooming tasks, shops for groceries, and can drive (Exhibit
7F). The above factors show that the claimant's impairments
are not disabling.

(R. at 18-19.)

With regard to the opinion evidence that the ALJ credited, the ALJ found:

As for the opinion evidence, the state medical consultants
found the claimant could perform unskilled work (Exhibit
1A, Exhibit 3A). Dr. Edward Baruch M.D. [a treating
physician] found the claimant is stable to return to work
(Exhibit 5F). Their opinions reflect the claimant's
stabilization with medication and the normal mental status
examinations in the record (Exhibit 10F, Exhibit 12F).
Therefore, these opinions are granted significant weight.

(R. at 19.)

With regard to the remainder of Plaintiff's treating physicians' opinions and the other opinions of the consultative examiners, the ALJ found:

Multiple people found a disabling level of impairments. The
claimants' mother submitted multiple letters, the claimant
is having trouble with concentration, managing her daily
routine, and requires daily help (Exhibit 14E, Exhibit
15E). Dr. Edward Baruch M.D. [a treating physician] found
moderate to marked mental limitations and severe depression
(Exhibit 6F). Dr. Robert Waters Ph.D. [a consultative
medical examiner] found that the claimant has significant
obstacles adapting to a typical work environment (Exhibit
7F). Dr. Nicole Post M.D. [a treating physician] found the
claimant has multiple marked mental limitations, can be on
task less than 80 percent of the day, and will be absent
four or more days per month (Exhibit 11F). Dr. Nicole Post

11

>     M.D. found marked or extreme mental limitations in a
>     separate opinion (Exhibit 13F).  Their opinions are
>     contradicted by the claimant's self-reported improvement
>     with medication (Exhibit 10F, Exhibit 12F).  Their opinions
>     are contradicted by evidence of stable mental status
>     examinations in the record (Exhibits 7F, 10F, 12F, 14F).
>     Therefore, their opinions are granted little weight.

(Id.)

The above findings demonstrate the ALJ concluded that Plaintiff's periods of stability overrode her periods of instability such that Plaintiff's mental impairments had not lasted, or could not be expected to last, for a continuous period of not less than 12 months, so as to render her not disabled.  See 42 U.S.C. § 1382c(a)(3)(A).  The evidence the ALJ relied upon does not support that conclusion.  Moreover, the ALJ's discounting of almost all medical opinions, including those of Plaintiff's treating physicians, is contrary to Third Circuit and Supreme Court precedent.

The ALJ cites to several pieces of evidence that show Plaintiff was mentally stable when properly medicated and during those periods capable of performing daily activities.  The ALJ first cites to Exhibits 10F and 12F generally without specific record citations to support the finding that Plaintiff had stable mental examinations.  These exhibits, however, are voluminous (Exhibit 10F is 153 pages, and Exhibit 12F is 54 pages) and they encompass treatment notes by the Center for Family Guidance over an extensive period of time (October 7,

2014 through January 6, 2017). While these records contain episodes when Plaintiff reported "feeling better," which the Court presumes the ALJ intended to reference to support of his conclusion that Plaintiff's condition was stable with treatment, the bulk of the medical records do not support that finding.

Plaintiff experienced her first episode of depression in 1992 at age 28. (R. at 592.) The more recent records relating to Plaintiff's disability claim evidence Plaintiff's struggles with depression and anxiety when she started treatment at the Center for Family Guidance in October 2014. By November 2015, Plaintiff reported feeling a little better (R. at 660-664), but by January 2016, Plaintiff reported increased depression and increasing anxiety. (R. at 666.) Plaintiff's mental state is listed as "anxious, sad" and "depressed and tearful" through her 10-week, in-patient admission to Princeton House which ended in May 2016, after which Plaintiff reported that it "doesn't feel it helped at all." (R. at 696.)

On May 4, 2016, Plaintiff's treating physician, Nicole Post, M.D., noted that Plaintiff was "doing poorly," and indicated that they would try a medication adjustment to "ER lithium." (R. at 698.) In June 2016, Plaintiff reported doing better (R. at 708), but by July 2016, Plaintiff became hypomanic, which required another adjustment to her lithium dosage (R. at 712). By November 2016, Plaintiff reported

feeling more depressed (R. at 764), "not doing well," and was "much more depressed" (R. at 768). Plaintiff is still listed as "depressed" in January 2017. (R. at 773.) These records do not support the ALJ's finding that Plaintiff was mentally stable with treatment continuously for more than 12 months.

Similar to the Center for Family Guidance progress notes, the ALJ cited generally to 66 pages of progress notes from Psychiatric and Addiction Services of Southern New Jersey authored by Edward Baruch M.D. (Exhibit 5F), which span from March 19, 2014 through February 15, 2015, to support the finding Plaintiff was stable to return to work. On page 19 in a letter dated October 23, 2014, Dr. Baruch wrote that Plaintiff was medically stable to return to work, with a recommended start of no more than 24 hours a week, with two twelve-hour shifts being acceptable.[6] (R. at 396.) But, on September 4, 2014, Dr. Baruch wrote a note that Plaintiff was unable to work. (R. at 413.) Both of these notes were written at the request of Plaintiff for her employer. (R. at 414.) Additionally, on

---

[6] The ALJ relies upon this letter to support his conclusion that Plaintiff retained the RFC to perform a full range of work. (R. at 19.) SSR 96-8p provides, however, that the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Dr. Baruch's note that permits Plaintiff to work no more than 24 hours a week does not meet the 40 hour per week requirement.

14

March 12, 2015, Dr. Baruch completed a medical source statement that related that Plaintiff had suffered from major depression, recurrent depression, and impaired cognition for over 20 years, and her activities of daily living have shown a decline from January to February 2015 (Exhibit 6F). (R. at 445-448.) Dr. Baruch's progress notes do not support the ALJ's finding that Plaintiff remained stable with treatment continuously for more than 12 months.

Other in-patient and intense out-patient treatment notes also demonstrate sporadic periods of medication-controlled stability (Exhibit 2F, 3F, 4F), but both before and after those treatments, the records demonstrate instability, as set forth above.

In addition to those records, the ALJ cites to Exhibit 14F to "contradict" the medical evidence about Plaintiff's disabling levels of impairments. (R. at 19.) Exhibit 14F is the record of Plaintiff's 10-week in-patient treatment at Princeton House from February 23, 2016 through April 2, 2016. (R. at 790-849.) The ALJ does not specify where in those treatment notes it reports that Plaintiff is stable, but ostensibly it must be at Plaintiff's discharge. As Dr. Post noted, however, Plaintiff reported that the in-patient treatment did not really help, and within a few months of her in-patient treatment, she was not doing well and was much more depressed.

Thus, it is clear that Plaintiff's medical records cited by the ALJ do not support the ALJ's determination they "evidence [] an improvement in the claimant's condition and stable mental status examinations with treatment." (R. at 19.) Critically, the ALJ does not cite to any treating or consultative physician who made that same finding. Instead, the ALJ rejects the "multiple people" who found Plaintiff to have "a disabling level of impairments," including three state consultants and two of Plaintiff's treating physicians. (Id.)

In making the RFC assessment an ALJ is required to consider all evidence before him. "In doing so, an ALJ may not make speculative inferences from medical reports," he is "not free to employ his own expertise against that of a physician who presents competent medical evidence," and "[w]hen a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted). Additionally, a treating physician's opinions are typically entitled to "great weight," and an ALJ may only reduce his reliance upon a treating physician's opinions if those opinions are inconsistent with other medical evidence, and if he explains his reasoning. Id. at 439 ("[A]n ALJ is permitted to accept or reject all or part of any medical source's opinion, as long as the ALJ supports his assessment with substantial

evidence."); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("We are also cognizant that when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them. . . . [W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected.").

Moreover, the ALJ cannot substitute his own lay opinion that Plaintiff exhibited extended and longitudinal mental stability with proper medication over essentially all of the evidence in the record that demonstrates otherwise.[7] See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (finding that the ALJ improperly supplanted the opinions of the plaintiff's treating and examining physicians with his personal observation and speculation, and directing that "in choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion" (citations and quotations omitted)). Significantly, the "principle that an ALJ should not

---

[7] Appendix 1 to Subpart P of Part 404 – Listing of Impairments, 12.00 Mental Disorders, provides, "Longitudinal medical evidence can help us learn how you function over time, and help us evaluate any variations in the level of your functioning."

17

substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." Id. at 319.

The ALJ must therefore restart the five-step analysis at step three. At step three, an ALJ must consider whether a claimant's severe impairment meets or equals a listed impairment in Appendix 1 to Subpart P of Part 404 - Listing of Impairments, 12.00 Mental Disorders.[8] Part of that assessment is determining whether a claimant's mental disorder results in extreme limitation of one, or marked limitation of two, paragraph B areas of mental functioning, which include: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. A marked limitation is where a claimant's functioning in an area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is where a claimant is not able to function in an area independently, appropriately, effectively, and on a sustained basis.

In his step three determination, the ALJ made conclusions

---

[8] The SSA published new rules updating the evaluation of mental impairments at step three. Those amendments were effective to pending claims as of January 17, 2017, and are therefore applicable to Plaintiff's disability claim. See Revised Medical Criteria for Evaluating Mental Disorders, 81 F.R. 66137 (Sept. 26, 2016).

without explanation as to Plaintiff's limitations in the areas of mental functioning. The ALJ found: (1) moderate limitation in Plaintiff's ability to understand, remember, or apply information; (2) mild limitation in Plaintiff's ability to interact with others; (3) moderate limitation in Plaintiff's ability to concentrate, persist, or maintain pace; and (4) moderate limitation in Plaintiff's ability to adapt or manage oneself. (R. at 16.) The ALJ noted that he relied upon his analysis in determining Plaintiff's RFC to support his step three findings. That independently is not error so long as the RFC determination is correct,[9] but here it is not.

The ALJ erred in his step three findings and RFC determination by failing to cite to specific record evidence that supports his conclusions. On remand, the ALJ must point to specific evidence that "reflects the overall degree to which [Plaintiff's] mental disorder interferes" with each area of mental functioning, because the "degree of limitation is how we document our assessment of your limitation when using the area of mental functioning independently, appropriately, effectively, and on a sustained basis." 20 CFR, Part 404, Subpart P,

---

[9] Jones v. Barnhart, 364 F.3d 501, 504–05 (3d Cir. 2004) (explaining that an ALJ's step three analysis is proper when the "decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that" a claimant does not meet the requirements for any listing).

19

Appendix 1.

## **CONCLUSION**

For the reasons expressed above, the decision of the ALJ is not supported by substantial evidence and must be reversed. The matter shall be remanded for further consideration consistent with this Opinion.

An accompanying Order will be issued.


Date: October 22, 2019             s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.